# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| LETICIA MEDINA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  4:13-CV-1858-SLB** |
| | ) | |
| CAROLYN  W.  COLVIN,  Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Leticia Medina brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying her application for a period of disability and disability insurance benefits ["DIB"].  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Ms. Medina filed an application for a period of disability and DIB on June 23, 2010, alleging disability beginning on March 24, 2010.  (Doc. 6-3 at R.24.)[1]  Her application was denied initially.  (*Id*.)  Thereafter, she requested a hearing before an Administrative Law Judge ["ALJ"], which was held on March 15, 2012.  (*Id*.)  After the hearing, the ALJ found

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  References to page numbers in the Commissioner's record are set forth as "R.___".

that Ms. Medina was "capable of performing her past relevant work as a data entry clerk and as a translator."  (*Id*. at R.38.)   In light of these findings, the ALJ found that Ms. Medina was not disabled. (*Id.* at R.39.)

Ms. Medina then requested the Appeals Council to review the ALJ's decision.  (*Id*. at R.19.)   The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision.  Therefore, [it] denied [Ms. Medina's] request for review." (*Id*. at R.1.)  The ALJ's decision is the final decision of the Commissioner.  (*Id*.)

Following denial of review by the Appeals Council, Ms. Medina filed an appeal in this court.  (*See generally* doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).   The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and citations omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. <u>DISCUSSION</u>

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "The term 'disability' means – (A) [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i)(1). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 404.1572. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[3]

───────────

[2]The regulation states:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir.

The ALJ found that Ms. Medina had not engaged in substantial gainful activity since March 24, 2010, the alleged onset date.  (Doc. 6-3 at R.26.)

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.  § 423(d)(3).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c).  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826

R. 36-2 (emphasis added).

5

F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523.  A claimant has the burden to show that she has a severe impairment or combination of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Medina had the following severe impairments:  "obesity and thyroid cancer status post-total thyroidectomy."  (Doc. 6-3 at R.27.)  He also found that Ms. Medina's "mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." (*Id.*)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).  The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

6

The ALJ found that Ms. Medina "does not have an impairment or combination of impairments that meets or medically equals one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §[§] 404.1520(d), 404.1525, and 404.1526)." (Doc. 6-3 at R.28.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [her] past relevant work. 20 C.F.R. § 404.1560(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 404.1560(e). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Medina had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following deviations or adjustments. The claimant can lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently with her upper right extremity. She can sit for up to six hours at a time during an eight-hour workday, and can stand and/or walk in combination for up to six hours in an eight-hour workday.

7

> The claimant cannot use her left upper, non-dominant extremity for any significant lifting and/or carrying on a regular basis, but she can use her left upper extremity for assistive purposes such as balancing.  The claimant has decreased cervical range of motion such that there is very little horizontal or vertical movement in her cervical spine.

(Doc. 6-3 at R.29.)  Considering Ms. Medina's RFC, the ALJ found that she could perform her past relevant work as a data entry clerk and as a translator.  (*Id*. at R.38.)

### 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1).   The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.   Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f).  If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove she in not capable of performing such other work.

8

Because the ALJ found Ms. Medina was capable of performing her past relevant work, the ALJ did not address whether other jobs existed in the national economy that an individual of Ms. Medina's age and with her RFC, education, and work experience could perform.

## B.  MS. MEDINA'S ISSUES ON APPEAL

Ms. Medina raises a number of issues on appeal:

1.  The ALJ erred by failing to order a consultive psycholoigical examination.  (*See* doc. 10 at 14-17.)

2.  The ALJ erred by substituting his opinion for that of Ms. Medina's treating sources and he failed to state adequate reasons for discounting their opinions.  (*See id*. at 17-24.)

3.  The ALJ's finding that Ms. Medina can perform her past relevant work is not supported by substantial evidence and is based on improper application of the appropriate legal standard.  (*See id*. at 24-27.)

4.  The ALJ erred in failing to consider Ms. Medina's severe impairments of low back pain radiating to her right thigh, neck pain, left arm weakness, limited range of motion of her cervical spine, bilateral shoulder pain, and severe depression.  (*See id*. at 27-28.)

5.  The ALJ erred in not considering Ms. Medina's severe impairments as a combina5tion of impairments.  (*See id*. at 28-30.)

6.  The ALJ erred by failing to state adequate reasons for finding Ms. Medina's testimony was not credible.  (*See id*. at 30-34.)

The court has reviewed the entire record before the ALJ, as well as the parties' briefs, and it finds that the Commissioner's decision is due to be affirmed.

9

## 1. DUTY TO ORDER CONSULTATIVE PSYCHOLOGICAL EXAMINATION

Ms. Medina contends, The ALJ had a duty to order a consultative exam based on diagnosis and treatment of severe depression." (Doc. 10 at 14.)  The Commissioner argues, "Plaintiff's argument lacks merit because the record was sufficiently developed for the ALJ to derive a dispositive RFC." (Doc. 11 at 32.)

"[T]he ALJ generally has an obligation to develop the record . . . ." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

> The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b).  When the record . . . contain[s] sufficient evidence to make an informed decision, the ALJ is not required to order a consultative examination.  *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988)( "[T]he [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision." (citing *Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir.1981))).  Sufficient evidence does not mean "absolute certainty" regarding a claimant's condition; the Social Security Act "requires only substantial evidence." *Id*. at 1210.

*Rollins v. Colvin*, Case No. 4:13-CV-1979-VEH, 2014 WL 3689787, *4 (N.D. Ala. July 22, 2014).  "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits.  The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

The court finds that the evidence in the Commissioner's record provided sufficient information regarding Ms. Medina's depression to allow the ALJ to reach an informed decision.  In this case, the ALJ addressed Ms. Medina's depression and explained his reasons for finding this mental impairment was not severe.  (*See* doc. 6-3 at R.27-28, 37, 38.)  He found, "The medical records show that the claimant generally has only mild symptoms of depression and that her depression is generally well controlled with medication." (*Id*. at 38.) Also, he found:

> The claimant's first episode of depression lasted less than three months, and she was only recently again found to have symptoms of depression in April of 2012.  There is no indication that this condition will not be successfully treated with medication as it had been in the past.  There is no evidence suggesting that this impairment will last long enough to meet the 12-month durational requirement, and thus far, this condition has constituted, at most, only a slight abnormality that cannot reasonably be expected to produce more than minimal, if any, work-related limitations.

(*Id*. at R.27.)  These findings are supported by substantial evidence.  Moreover, the court finds that Ms. Medina has not identified any unfair prejudice caused by the failure to obtain a consultative psychological examination. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

The court finds no error as a result of the ALJ's failure to obtain a consultive psychological examination.

### 2. Opinions of Treating Physicians

Ms. Medina contends, "The ALJ substituted his opinion for the opinions of treating physician Dr. Teschner, Nurse Practitioner Carol James . . . and the IME[4] [independent medical examination] Evaluator Dr. Wilson," and he "failed to state adequate reasons for discrediting [these] opinions." (Doc. 10 at 17 [footnote added].) The Commissioner disagrees on the ground that the ALJ founds these individuals were not treating physicians, and the ALJ stated specific reasons supported by the substantial evidence for the weight accorded each source. (*See* doc. 11 at 20-23.)

Ms. Medina states:

> In the Eleventh Circuit, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary" and that":
>
>> ""good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons. *Id.*"
>
> *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).
>
> In *Lewis*, the Eleventh Circuit held that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *Lewis*, 125 F3d at 1440.

---

[4]"IME" is an "independent medical evaluation" or an "independent medical examination." *Watkins v. Astrue*, 925 F. Supp. 2d 1257, 1263 (N.D. Ala. 2013); *Riggins v. Astrue*, Case No. 3:09-cv-856-J-TEM, 2010 WL 3768365, *4 (M.D. Fla. Sept. 22, 2010).

> Absent good cause to the contrary, the Commissioner must accord substantial or considerable weight to the treating physician's opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).

(Doc. 10 at 18-19.)   Although Ms. Medina has correctly stated the law, this law does not compel reversal of the Commissioner's decision because the ALJ specifically found these individuals were not treating physicians whose opinions are entitled to entitled to great or conclusive weight.

First, the ALJ found that neither James nor Wilson was a "treating physician." (*See* doc. 6-3 at R.37 [James is a nurse Practitioner, not a physician];*id*. at R.34, R.38 [Wilson performed a consultive examination].)   Second, he discounted Teschner's opinion based in part on the extremely limited length of her treatment of Ms. Medina.   (*Id*. at R.38 [citing 20 C.F.R. § 404.1527(d)(2)(i)].)   These findings are supported by substantial evidence.

Moreover, Ms. Medina's contention that the ALJ failed to specify the weight given to these medical source opinions and explain his reason for so doing is contrary to the ALJ's Decision.   In his decision, the ALJ states:

> The opinions of Carol James, C.R.N.P., are given little weight.  The opinion of Ms. James, that the claimant is "unable to work" or that she is "disabled", is a determination that is reserved to the Commissioner of Social Security. Furthermore, Ms. James is a nurse practitioner and not a medical doctor or specialist.  Therefore, this opinion is given little weight.  A simple statement by a medical source that the claimant is "disabled" or "unable to work" does not mean that the claimant will be found disabled, as this is an opinion reserved to the Commissioner . . . .
>
> Likewise, the opinions of Jane Teschner, M.D., are also given little weight. While Dr. Teschner is a qualified medical source, her opinions appear to be

based on nothing more than the subjective complaints of the claimant.  There is no evidence of any objective testing of any kind being conducted by Dr. Teschner.[5]  Furthermore, the opinion us based on only two office visits, and this short length of treatment is a consideration . . . .

. . .

The findings of Dr. Wilson that the claimant has depression and anxiety are given some weight.  Dr. Wilson is a licensed psychologist, and he is deemed by regulation to be a "highly qualified expert in Social Security disability evaluation."  His opinion, however, that the claimant had a Global Assessment of Functioning score of only 48, is not supported by the overall medical evidence as a whole and is, therefore, afforded only some weight.  There is no evidence contained within the longitudinal record that shows the existence of more than mild mental symptoms or limitations.  The medical records show that the claimant generally has only mild symptoms of depression and that her depression is generally well controlled with medication.

(Doc. 6-3 at 37-38 [footnote added; internal citations omitted].)

The court finds that the ALJ's decision regarding the weight accorded these medical sources is supported by substantial evidence and in conformity with the law.  Therefore, the court finds no error with regard to the ALJ's assessment of the medical source opinion statements.

### 3.  Past Relevant Work

Ms. Medina alleges that the ALJ's "the finding that claimant can perform past work is not supported by substantial evidence," and the "ALJ failed to apply proper legal standard

---

[5]Dr. Teschner first saw Ms. Medina on September 9, 2011.  (Doc. 6-3 at 430.)  She returned on September 14, 2011, for "follow up on x-rays," which Ms. Medina "didn't get done," but "she brought x-rays she had from" another health-care provider. (*Id*. at 428.)  Dr. Teschner's notes appear to state that Ms. Medina needs an MRI, (*see id*. at 434), but the record does not indicate that she had one done.

for determining whether claimant can perform past work." (Doc. 10 at 24.)  This contention

is not supported by specific citation to the record, except reference to a physical residual

capacity evaluation prepared sometime before the hearing before the ALJ.  Rather, Ms.

Medina sets forth a discussion of Eleventh Circuit and Alabama district court opinions and

then states, "The ALJ did not apply the proper legal standards in determining that claimant

can perform her past work and the finding was not supported by substantial evidence." (*Id.*

at 27.)  The Commissioner disagrees "because the ALJ properly determined her RFC finding

and relied upon VE [vocational expert] testimony to find she could perform past relevant

work." (Doc. 11 at 35.)

> As set forth above, the ALJ found Ms. Medina had the following RFC:
>
> [T]he claimant has the residual functional capacity to perform light work as
> defined in 20 C.F.R. § 404.1567(b), with the following deviations or
> adjustments.  The claimant can lift and/or carry up to twenty pounds
> occasionally and up to ten pounds frequently with her upper right extremity.
> She can sit for up to six hours at a time during an eight-hour workday, and can
> stand and/or walk in combination for up to six hours in an eight-hour workday.
> The claimant cannot use her left upper, non-dominant extremity for any
> significant lifting and/or carrying on a regular basis, but she can use her left
> upper extremity for assistive purposes such as balancing.  The claimant has
> decreased cervical range of motion such that there is very little horizontal or
> vertical movement in her cervical spine.

(Doc. 6-3 at R.29.)   This RFC is substantially similar to a Medical Source Statement of

Ability to Do Work-Related Activities (Physical), prepared by Henry M. Born, M.D.

(*Compare id. with* doc. 6-9 at R.492-R.497.)  Indeed, the ALJ found:

> The findings and opinion[s] of Drs. Thomas, Born, and Russell are given great
> weight.  These findings and opinion[s] are based upon direct observation and

15

examination of the claimant, as well as review of her entire medical record and course of treatment. Dr. Born's and Dr. Russell's findings and opinions are consistent with each other, as well as internally consistent with the evidence as a whole. While Dr. Thomas did not offer any opinion as to the claimant's limitations, her findings were nonetheless useful in determining the full scope of the claimant's impairments. As these opinions are well supported and largely uncontradicted by other objective evidence, they are entitled to great weight.

(Doc. 6-3 at R.38 [internal citations omitted].)

The court finds that the ALJ applied the correct legal standard to determine Ms. Medina's RFC, and his factual finding regarding her RFC is supported by substantial evidence.

Ms. Medina also contends that ALJ failed to make the required findings regarding the physical and mental demands of her past relevant work. (*See* doc. 10 at 26-27.) Although the ALJ's decision does not enumerate the demands of Ms. Medina's past relevant work, the court finds that he was aware of the physical and mental demands of her past relevant work and relied on the VE to determine that Ms. Medina could perform her past relevant work despite the limitations set forth in her RFC. At the hearing, the VE testified that Ms. Medina's past relevant work as a data entry clerk was "sedentary" and "semiskilled," with a "SVP [Specific Vocational Preparation] of 4."[6] (Doc. 6-3 at 64.) He noted that Ms.

---

[6]The SVP, or Specific Vocational Preparation, "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Specific Vocational Preparation*, Dictionary of Occupational Titles, Appendix C, found at 1991 WL 688702. SVP of 4 equates to "Over 3 months up to and including 6 months," and SVP of 7 equates to "Over 2 years up to and including 4 years." *Id.*

Medina "was doing some translating as well" at this job; translating is a sedentary, skilled

job with an SVP of 7.  (*Id.* at 64-65.)  The VE testified as follows:

> Q.  . . .  If we have a hypothetical individual, this individual is a younger individual with a high school education, the individual . . . can perform light exertion as it's defined in the Dictionary of Occupational Titles, but there are additional limitations in that the individual could not use the left non-dominant upper extremity for any significant lifting on a regular basis, could use that extremity to balance something being lifted by the right dominant upper extremity; additionally this individual has the pre-cervical ... range of motion such that there is very little rotational movement of the neck; and a reduced range of vertical or up and down [movement]; given that combination of limitations, could this hypothetical individual perform any of these jobs that you've described for the claimant's work history?

> A. . . . That person would be able to do the translator job.  And in most data entry jobs – the one that she had was – included other tasks than data entry, but if it's strictly data entry there would not be significant lifting in the non-dominant lifting in the non-dominant hand and I'm assuming that person could still do handling and fingering, which was the primary function required in that job, so I would say that job would be possible.  . . .

(*Id.* at 66-67.)

The court finds no error in the ALJ's finding that Ms. Medina could perform her past

relevant work as a data entry clerk and a translator as those job are customarily performed.

### 4.  Claimant's Impairments

Ms. Medina contends that the ALJ "failed to consider all of [her] severe

impairments." (Doc. 10 at 27.)  Specifically, she contends the ALJ should have considered:

"claimant's excruciating lower back pain with radiation of pain to right thigh after being

involved in an auto accident on [August 2, 2010], her neck pain from thyroid surgery, left

arm weakness; [l]imited range of motion at the cervical spine; bilateral shoulder pain and

severe depression with a GAF [of] 48." (*Id.* [citing doc. 6-9 at R.484].)  The court finds that the ALJ actually considered her neck pain, left arm weakness, limited range of motion and left arm pain.  (Doc. 6-3 at R.29-R.37.)  Therefore, it finds no error.

At the hearing, Ms. Medina stated that her main complaints were the residual effects of her neck surgery, including pain and reduced range of motion in her neck and left arm.  (Doc. 6-3 at R.50.)    She did not testify regarding low back pain or depression.[7]  (*See generally id.* at R.50-63.)  As to plaintiff's low back pain, the court notes that the record contains evidence that Ms. Medina sought treatment for back pain on June 2, 2008.  (Doc. 6-9 at R.439.)  This record predates her alleged onset date.  As to depression, the ALJ specifically discussed the alleged impairment and found it was not severe.  (Doc. 6-3 at . 27-28, 38.)  This finding is supported by substantial evidence.  Therefore, the court finds no error in the ALJ's failure to find Ms. Medina had severe impairments of low back pain or depression.

For the reasons set forth above, the court finds no error in the ALJ's determination and consideration  of Ms. Medina severe impairments.

---

[7]When asked how she was doing emotionally, Ms. Medina testified, "It's very depressing, I try not to cry in front of the kids but it's hard."  (Doc. 6-3 at 61.)  At the hearing, she did not testify regarding any diagnosis, treatment, and symptoms of clinical depression.

### 5.  Combination of Impairments

Ms. Medina contends, "The ALJ failed to consider claimant's combination of impairments in determining disability." (Doc. 10 at 28.)  Without citation to the record, she states, "The ALJ failed to ***acknowledge*** pain and depression as severe impairments." (*Id*. at 30 [emphasis added].)  For the reasons set forth above, the court finds the ALJ considered Ms. Medina's complaints of pain and that he found her depression was not a severe impairment.  Therefore, her contention that the ALJ failed to "acknowledge" her pain and depression is simply incorrect.

Moreover, the court finds the ALJ specifically stated he considered her severe impairments in combination and his RFC reflects those limitations.  (*See* doc. 6-3 at R.28, R.29.)  The court finds no error in the ALJ's alleged failure to consider Ms. Medina's impairments in combination.

### 6.  Credibility of Allegations of Pain

Ms. Medina contends, "The ALJ failed to state adequate reasons for finding claimant not credible." (Doc. 10 at 30.)  She quotes her hearing testimony and the ALJ's decision, (*id*. at 32-34), but she does not explain her objection to the ALJ's findings or explain why his reasons for finding her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment," (doc. 6-3 at 30.)

[C]redibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and [the court] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995)." *Mitchell v. Commissioner, Social Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).  In this case, the ALJ "clearly articulated" and "pointed to specific reasons for

discrediting [Ms. Medina's] subjective complaints of disabling pain."[8]  *See id*.; *see also* doc.

---

[8]With regard to Ms. Medina subjective complaints of pain, the ALJ found:

After considering the medical evidence in its entirety, the [ALJ] concludes that the claimant's allegations of experiencing chronic and daily pain are simply not supported by the medical evidence as [a] whole.  The evidence shows that the claimant underwent radical surgical treatment secondary to thyroid cancer in March 2010; however, there is no objective evidence available that would account for her continued allegations of experiencing "10/10" pain.  The record as a whole is void of consistent complaints of chronic and debilitating pain, and she told Dr. Russell that she only takes her pain medications about three time a week.  Records from the claimant's regular treating physicians show that she has never been placed on any physical restrictions due to her medical conditions.  The medical evidence shows that the claimant was referred to occupational therapy for ten visits, but the claimant only attended the initial session and never returned for follow-up therapy.  She testified at the hearing that the physical therapist told her that she likely had nerve damage from her surgery, but records from the therapist told her that the claimant is the one who alleged possible nerve damage.  When the case was reviewed by Dr. Haas at the lower level adjudication, he noted that an x-ray of her cervical spine was normal and there was no muscle atrophy present.  Dr. Haas also noted that the claimant prepares meals for her family, performs household chores, drives a car and shops for groceries.  The claimant also testified that she is the primary caregiver for her infant son, although she does receive assistance from other family members.

The claimant's testimony and other allegations of pain and functional restrictions are simply disproportionate to the objective medical evidence.  The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain or limitations alleged.  There are no diagnostic studies to show abnormalities that could be expected to produce such severe and chronic symptoms. The physical findings in the record do not establish the existence of significant neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.

The claimant betrayed no obvious evidence of pain of discomfort while testifying at the hearing.  This apparent lack of discomfort during the hearing

-3 at R.29-R.30, R.36-R.37.  His findings are supported by substantial evidence in the record.

The court finds no error in the ALJ's determination of Ms. Medina's credibility.

## **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.    An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 24th day of March, 2015.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

---

is given *some* slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and residual functional capacity.

Taking all of the above into consideration, including the claimant's testimony, the Administrative Law Judge concludes that, although the evidence establishes the presence of an underlying medical condition capable of producing some pain and limitations, the preponderance of the evidence does not confirm disabling pain or other limitations arising from the claimant's alleged impairments. The claimant's alleged inability to perform all substantial gainful activities is simply not corroborated by substantial evidence. Giving the claimant the benefit of the doubt, the Administrative Law Judge finds no reason that the claimant cannot perform work activity as defined in the residual functional capacity.

(Doc. 6-3 at R.36-R.37; *see also id*. at 30 [finding "the claimant's medically determinable impairments could reasonably be expected to cause [pain and the inability to to move her neck and arm]; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment"].)